IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **In re:** | * | |
| **GORDON ENTERPRISES, INC.** | * | |
| **d/b/a BUDGET CAR AND TRUCK** | * | |
| **RENTAL OF P.G.** | * | |
| | * | |
| **Debtor.** | * | |
| | * | |
| **CAPITAL AUTO RENTAL** | * | |
| **SERVICES, INC., A DIVISION OF** | * | |
| **CAPITAL FACTORS, INC.** | * | |
| **AND** | * | |
| **AUTO SALES, INC.** | * | |
| | * | |
| **Appellants,** | * | |
| | * | |
| v. | * | **CIVIL NO. RDB-04-3524** |
| | * | |
| **JORDAN MOTORS, INC.,** | * | |
| **d/b/a JORDAN AUTOMOTIVE GROUP** | * | |
| | * | |
| **Appellee.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This case is before the Court on appeal from the Order of United States Bankruptcy Judge Duncan W. Keir entering judgment against Appellants Capital Auto Rental Services, Inc. ("Capital") and Auto Sales, Inc. ("Auto Sales") in the amount of $726,682.00. Specifically, Appellants challenge Judge Keir's grant of partial summary judgment in favor of Appellee Jordan Motors, Inc. ("Jordan"), holding that the Appellee Jordan is a holder in due course under the Maryland Commercial Code; and, that the secured financing transaction following Debtor Gordon Enterprises, Inc.'s ("Debtor")

1

bankruptcy petition was not illegal, and not assertable as a defense against a holder in due course.

Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. Rule 8012.

For the reasons that follow, Judge Keir's Orders will be AFFIRMED.

## I.      BACKGROUND

According to Appellants, on December 4, 1998, Capital and Debtor executed a Master Automobile Loan and Security Agreement. (Appellant Br. at 8). This agreement involved Capital providing Debtor, a car rental agency, money for the purchase of vehicles to be included in Debtor's rental fleet, in exchange for a promise to repay the loan and a security interest in the vehicles along with their rental and insurance proceeds. (Appellant Br. at 9).

On February 1, 2000, Debtor entered into the Fleet Purchase Agreement with Jordan, in which Debtor agreed to purchase vehicles for its rental fleet. (Appellant Br. at 9 (citing Complaint ¶ 9, Ex. 1)). Debtor purchased twenty-three vehicles from Jordan for $596,471.60 on open account between April 30 and May 7, 2001. (Appellant Br. at 9 (citing Complaint ¶ 11)). With Debtor's assurance that it would promptly obtain financing, Jordan delivered the aforementioned vehicles to Debtor during April and May, 2001. (Appellant Br. at 9 (citing Hayward Aff. ¶ 9; Complaint ¶ 9)). On May 18, 2001, Debtor requested that Capital finance the aforementioned vehicles purchased from Jordan. (Appellant Br. at 5). Also on May 18, 2001, Jordan faxed to Capital bills of sale and manufacturer's certificates of origin for each of the aforementioned vehicles. (Appellant Br. at 11 (citing Capital Summary Judgment Memo, Ex. I-J)). Capital then instructed Auto Sales, its strategic partner, to draw a check in

the amount of $596,471.60, dated May 21, 2001, payable to Jordan.[1]  (Appellant Br. at 11)(citing Hayward Aff. ¶ 15; Capital Summary Judgment Memo, Ex. K).

On May 24, 2001, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  (Appellant Br. at 4).  On May 29, 2001, Capital, unaware of Debtor's bankruptcy petition, agreed to provide financing of $596,471.60 for the purchase of aforementioned vehicles. (Appellant Br. at 5, 10 (citing Hayward Aff. ¶ 11)).  Capital also agreed to restructure an existing loan to Gordon. (Appellant Br. at 10).  These agreements were in exchange for Debtor's promises that he would immediately cure arrearages to Capital, and that an affiliate of Debtor would provide additional collateral.  (Id.)(citing Capital Summary Judgment Memo, Ex. H).  On May 30, 2001, Capital signed the aforementioned check and forwarded it to Jordan.  (Appellant Br. at 12 (citing Hayward Aff. ¶ 22; Capital Summary Judgment Memo, Ex. K)).

According to Appellants, Jordan, without any instruction or direction by Capital, sent the manufacturer's certificates of origin for the aforementioned vehicles, with a notation of a lien in favor of

---

[1] The Bankruptcy Court's Summary of Facts followed Appellants' direction by describing Auto Sales as the "strategic partner" of Capital. (September 29, 2004 Summ. of Facts at 4).  At the Bankrupty Court's September 29, 2004 Ruling, Appellants failed to argue against the Court's finding that Auto Sales drafted the aforementioned check as the agent of Capital, and the judgment should be against both Auto Sales and Capital. (Tr. of September 29, 2004 Ruling at 18-19).  On January 21, 2005, the Bankruptcy Court entered judgment against Capital and Auto Sales, jointly and severally. (ADV. NO. 01-01265-DK: Paper No. 71 and 72).  Appellant's Brief states that the record indicates that all of Jordan's contact was only with Capital, and never with Auto Sales.  (Appellant Br. at 13). Further, Appellants' Brief describes Auto Sales as the "strategic partner" of Capital. (Appellant Br. at 11).  Appellants have failed to address the issues on appeal of the relationship of  Capital and Auto Sales, and the propriety of a joint and several judgment.  Thus, this Court will simply employ the characterization of "strategic partners" found in Appellants' Brief without making a finding regarding these issues.

Capital, to Debtor.  (Appellant Br. at 12).  Jordan, however, states that it sent these certificates of origin at Capital's direction.  (Appellee Br. at 18 (citing Ex. B.1, ¶ 25; Ex. 2, ¶ 25)).  Jordan asserts that it sent these certificates of origin some time after May 21, 2001, when Capital instructed Auto Sales to draw a check for $596,471.60 payable to Jordan.  (Appellee Br. at 18).  Capital alleges that Jordan sent the certificates of origin to Debtor at some time after Jordan had learned the Capital agreed to finance the aforementioned vehicles, after Debtor filed its bankruptcy petition, and prior to receipt of the aforementioned check.  (Appellant Br. at 12).  The Bankruptcy Court's Summary of Facts states that "Jordan received the check sometime after May 21, 2001 and upon receipt of the check Mr. Hayward [,a Capital agent,] directed Jordan to send the certificates of origin directly to Debtor and to note the lien of Capital on those certificates."  (September 29, 2004 Summ. of Facts at 5).

On June 1, 2001, Capital received in the mail the Notice of Chapter 11 Bankruptcy Case.  (Appellant Br. at 12)(citing Hayward Aff. ¶ 23; Capital Summary Judgment Memo, Ex. L).  Capital immediately stopped payment on the aforementioned check.  (Appellant Br. at 12)(citing Hayward Aff. ¶ 24, Capital Summary Judgment Memo, Ex. L).  On June 4, 2002, Debtor's case was converted to a Chapter 7 Bankruptcy.[2]  (Appellant Br. at 5).

On July 6, 2001, Jordan filed this Adversary Proceeding against Capital, Auto Sales, and Debtor.  (Appellant Br. at 6).  The five-count Complaint sought payment of the aforementioned check along with damages arising from the stopping of payment of this check.  (Id.)  The counts against Capital and Auto

---

[2] The Stipulation and Consent Order converting Debtor's case to a Chapter 7 Bankruptcy may be found at United States Bankruptcy Court for the District of Maryland Case Number 01-16880-NV at Paper Number 164.

4

Sales included promissory estoppel, unjust enrichment, improper issuance of a stop payment order, a declaration that Jordan is a holder in due course, and equity. (Id.) On August 10, 2001, Capital and Auto Sales moved to dismiss the Complaint, or alternatively, for summary judgment, on the ground that Jordan was not entitled to recovery because the secured transaction was void *ab initio* due to Debtor's failure to give notice and obtain prior Bankruptcy Court approval of the transaction. (Id.) At a hearing on December 5, 2001, the Bankruptcy Court requested additional briefing on the issue of whether Jordan is a holder in due course. (Appellant Br. at 6). Jordan filed a cross motion for summary judgment on this issue, and Capital and Auto Sales filed oppositions. (Id.) On October 6, 2004, following a hearing on September 29, 2004, the Bankruptcy Court entered an Order denying the motions of Capital and Auto Sales, and granting Jordan's Motion for Partial Summary Judgment, holding that Appellee Jordan is a holder in due course under the Maryland Commercial Code. (Appellant Br. at 7). On October 12, 2004, Capital and Auto Sales filed a Notice of Appeal of this Order.[3] On January 21, 2005, the Bankruptcy Court entered an Order that the remaining counts of the Complaint be dismissed, and judgment entered against Capital and Auto Sales in the amount of $726, 682.00, plus interest at the federal judgment rate from January 20, 2005, and costs in accordance with Local Bankruptcy Rule 7054-1. (Adversary Case: Paper No. 71 and 72). On January 31, 2005, Capital and Auto Sales filed a Notice of Appeal of this Judgment and Judgment Order, along with a Motion to Consolidate Appeals. (Paper No. 7). On February 18, 2005, this Court granted a motion by Capital and Auto Sales to consolidate their October

---

[3] This Notice of Appeal may be found at Adversary Case Number 01-01265-DK at paper number 12. This adversary case is related to United States Bankruptcy Court for the District of Maryland Case Number 01-16880-NV.

12, 2004 and January 31, 2005 appeals.  (Paper No. 11).

## II.     STANDARD OF REVIEW

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  Fed. R. Bankr. P. Rule 8013; *Butler v. Shaw*, 72 F.3d 437, 441 (4th Cir. 1996); *In re Bulldog Trucking*, 147 F.3d 347, 351 (4th Cir. 1998); *In re Three Flint Hill, Ltd.*, 213 B.R. 292, 297 (D. Md. 1997).  The court may affirm, modify or reverse a bankruptcy judge's order, or remand with instructions for further proceedings.  *See* Fed. R. Bankr. P. Rule 8013.  This appeal is brought under Federal Rules of Bankruptcy Procedure Rule 8001(a).  The Court has jurisdiction over the matter pursuant to 28 U.S.C. §158(a).  A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948).     Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bankr. P. 7056, when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.  In undertaking this inquiry, a court must

view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

Appellants Capital and Auto Sales assert three arguments in support of their appeal. Appellants' primary argument is that the Bankruptcy Court erred in holding that Jordan is a holder in due course under the Maryland Commercial Code. Appellants contend that Jordan is not a holder in due course because Jordan did not take the aforementioned check for value. Alternatively, Appellants argue that even if Jordan is a holder in due course, Jordan cannot enforce an illegal transaction. Appellants contend that the May 29, 2001 agreement between Capital and Debtor was illegal because it violated Bankruptcy Code Sections 362 (a), 364(c), and 549(a). Finally, Appellants make the alternative argument that even if Jordan is a holder in due course able to enforce the aforementioned May 29, 2001 agreement, Capital was entitled to cancel the aforementioned May 29, 2001 agreement.

### A. Holder in Due Course

Appellants Capital and Auto Sales contend that Jordan is not a holder in due course because it did not take the aforementioned check for value. MD. CODE ANN. COM. LAW I § 3-302(a)(2) governs the requirements of a holder in due course and provides as follows:

(a) Subject to subsection (c) and § 3-106(d), "holder in due course" means the holder of

an instrument if:

> (2) The holder took the instrument for (i) value, . . .

"Value" is then defined in MD. CODE ANN. COM. LAW I § 3-303(a):

> (a) An instrument is issued or transferred for value if:
>
>> (1) The instrument is issued or transferred for a promise of performance, to the extent the promise has been performed;
>>
>> (2) The transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;
>>
>> (3) The instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due;
>>
>> (4) The instrument is issued or transferred in exchange for a negotiable instrument; or
>>
>> (5) The instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.

The transcript of Bankruptcy Judge Duncan W. Keir's ruling on the cross motions suggests that the Bankruptcy Court found that the facts of this case best satisfy MD. CODE ANN. COM. LAW I § 3-303(a)(1). The Bankruptcy Court stated that Jordan gave value when it "made a promise to deliver the ordered vehicles, it delivered the vehicles, and it delivered the titles." (Tr. of September 29, 2004 Ruling at 10).

Appellants have not offered any evidence that the Bankruptcy Court erred as a matter of law in finding that the facts of this case satisfy MD. CODE ANN. COM. LAW I § 3-303(a)(1). Appellants do not dispute the fact that Jordan promised to deliver vehicles and manufacturer's certificates of origin to Debtor. Appellants do not dispute the fact that Jordan performed on this promise. Further, Appellants do not dispute that if the facts satisfy MD. CODE ANN. COM LAW I § 3-303(a)(1), then Jordan is a holder in due

course pursuant to MD. CODE ANN. COM LAW I § 3-302(a). Instead, Appellants seek to insert a series of requirements into Section 3-303(a)(1), and then argue that the facts of this case do not satisfy these requirements.

Appellants first argue that Jordan did not act in reliance upon Capital's alleged promise of payment. Without offering any justification, Appellants attempt to insert into Section 3-303(a)(1) a requirement that the promise be made in reliance upon the issue or transfer of the instrument. Whether or not Jordan acted in reliance upon Capital does not affect the facts that the aforementioned check was issued for a promise to deliver vehicles and their manufacturer's certificates of origin, and both the vehicles and certificates were delivered to Debtor.

Appellants then argue that there was no value in the aforementioned vehicles because Debtor could only park them on its premises, and Capital could not obtain a security interest in them. Again, Appellants appear to be inserting requirements into the statutory definition of "value". The statute does not consider to what extent the party who issues or transfers the instrument personally benefits from the promise or its performance. The aforementioned check was issued for the promise to deliver the vehicles, and they were delivered.

Finally, Appellants argue that there was no value in the notation of a lien on the manufacturer's certificates of origin. Appellants' argument, then, is again irrelevant to the language of Section 3-303(a)(1). Whether Capital personally benefitted from this notation does not affect the facts that the aforementioned check was issued for a promise of performance, and that the promise was performed.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bankr. P. 7056, when there is no genuine issue as to any material fact, and the

moving party is plainly entitled to judgment in its favor as a matter of law. The Bankruptcy Court did not err in its finding that there is no genuine issue as to any material fact regarding whether Jordan is a holder in due course under the Maryland Commercial Code. Further, Jordan is plainly entitled as a matter of law to judgment that it is a holder in due course under the Maryland Commercial Code. Cf. *Bank of Glen Burnie v. Loyola Federal Savings Bank*, 336 Md. 331, 345, 648 A.2d 453, 459 (1993).

### B. Illegal Transaction

Alternatively, Appellants Capital and Auto Sales argue that even if Jordan is a holder in due course, Jordan cannot enforce an illegal transaction. MD. CODE ANN. COM LAW I § 3-305(b) states that "[t]he right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1)." Subsection (a)(1)(ii), then, lists the defenses of "duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor."

Appellants do not appear to challenge the Bankruptcy Court's definition of "illegal" under MD. CODE ANN. COM LAW I § 3-305(a)(1)(ii): "the obligation would be entirely null and void inalterably under appropriate law." Appellants cite to *Resolution Trust Corp. v. Maplewood Investments*, 31 F.3d 1276, 1283 (4th Cir. 1994) for the same idea: "a transaction must be void and not voidable to be a defense against a holder in due course." (Appellant Br. at 24-25).

Appellants contend that the May 29, 2001 agreement between Capital and Debtor was void because it violated Bankruptcy Code Subsections 362 (a), 364(c), and 549(a). Subsection 362(a) operates as a stay of "any act to perfect, or enforce any lien against property of the estate." (Appellant Br. at 28)(quoting Bankruptcy Code §362(a)(4)). Subsection 364(c) allows the debtor to obtain post-

petition secured financing with court approval.  Finally, subsection 549(a) allows the debtor to avoid a post-petition transfer not authorized by the court.

First, Appellants' argument that the aforementioned agreement was void under Bankruptcy Code Subsection 362(a) is not properly before this Court, because it was not raised below before Judge Keir. As an appellate court, this Court "applies the standard of review generally applied in [the] federal court [of] appeals" and will not generally consider issues not raised before the bankruptcy court.  *Webb v. Reserve Life Insurance Co.*, 954 F.2d 1102, 1103-04 (5th Cir. 1992).  *See Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985)("[W]e ordinarily will not consider issues raised for the first time on appeal."), *United States v. The Barge Shamrock*, 635 F.2d 1108, 1111 (4th Cir. 1980)("It is true that this Court does not generally pass on issues not previously raised.").  Appellants argue that "Judge Keir specifically ruled that Section 362 must be examined in reference to the illegality of the subject post-petition secured financing transaction and that the transaction was not illegal under that section." (Appellant Reply Br. at 14 (citing Tr. of September 29, 2004 Ruling at 13)).  Judge Keir did state that Section 362 "must be examined"; however, the record before this Court does not indicate that Judge Keir held that the transaction was not illegal under that section.  Instead, Judge Keir stated "I find that this is not an illegal transaction as the Uniform Commercial Code uses [th]at word when illegality is asserted on the basis of the failure to obtain 364 approval under the Bankruptcy Code of the transaction."  (Tr. of September 29, 2004 Ruling at 18). Further, although Judge Keir indicated that Section 362 must be examined, there is no indication that Judge Keir relied on that section in arriving at his holding that the aforementioned agreement was not illegal under Bankruptcy Code Section 364.

Second, regarding Section 364, the Bankruptcy Court reasoned that because bankruptcy courts

11

have the authority to authorize post-petition secured financing after it has been obtained, such a financing agreement is only voidable, not void. Appellants argue that the Bankruptcy Court erroneously relied upon *In re McConville*, 110 F.3d 47 (9th Cir. 1997), and *In re Lehigh Valley Professional Sports Clubs, Inc.*, 260 B.R. 745 (Bankr. E.D. Pa. 2001).

Appellants suggest that the Bankruptcy Court's reliance on *In re McConville* was misplaced because it was unclear whether the Court in *In re McConville* found the transaction before it void or voidable. (Appellant Br. at 29). The Bankruptcy Court here, however, appears correctly to have relied on *In re McConville* for the proposition that bankruptcy courts "should fashion a remedy under the equities of the situation" where the trustee, or debtor-in-possession, did not seek court authorization before obtaining secured credit. (Tr. of September 29, 2004 Ruling at 14). The Court in *In re McConville* stated that "It is within the power of that court [,the bankruptcy court,] to rescind the contract unlawfully made. The exercise of this corrective power, however, should not occur without regard to the equities of the situation, for, within the limits set by the Code, a bankruptcy court must do equity." *In re McConville*, 110 F.3d 47, 50 (9th Cir. 1997).

Appellants then argue that the Bankruptcy Court erroneously relied upon *In re Lehigh Valley Professional Sports Club, Inc.* because the bankruptcy court there denied retroactive approval of the post-petition financing transaction. (Appellant Br. at 29). The Bankruptcy Court correctly relies on *In re Lehigh Valley Professional Sports Club, Inc.* for the proposition that "the bankruptcy court has the power to approve a transaction that should have fallen under Section 364 approval 'on a retroactive basis'." (Tr. of September 29, 2004 Ruling at 17). The Court in *In re Lehigh Valley Professional Sports Club, Inc.* stated that "Most of the courts that have considered the issue have concluded that the

12

bankruptcy court has the power to approve post-petition financing under § 364 on a retroactive basis." *In re Lehigh Valley Professional Sports Clubs, Inc.*, 260 B.R. 745, 750 n.11 (Bankr. E.D. Pa. 2001).

Further, Appellants fail to persuade this Court that the aforementioned agreement is void where the bankruptcy court has not even considered whether to grant or to deny authorization. Appellants argue that pursuit of a retroactive authorization is a "risky gamble". The existence of such risk, though, does not make the transaction void. The transaction is not void until the bankruptcy court denies retroactive authorization. Thus, the Bankruptcy Court properly exercised its equitable power in holding that the aforementioned agreement is not an illegal transaction under Section 364 of the Bankruptcy Code.

Where the bankruptcy court has the authority retroactively to authorize a post-petition secured financing, Appellants fail to persuade this Court that the aforementioned agreement is illegal under Sections 362 and 549 of the Bankruptcy Code. Appellants argue that any action to perfect its lien in the aforementioned vehicles would have violated Bankruptcy Code Subsection 362(a)(4), which provides that the filing of a petition operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." The bankruptcy court's power retroactively to authorize a post-petition secured financing must include the power retroactively to authorize acts that created, perfected, or enforced a lien associated with the financing. Otherwise, the power retroactively to authorize post-petition financing would be meaningless. Thus, the aforementioned agreement is not illegal under §362(a)(4) of the Bankruptcy Code.

Appellants then argue that the aforementioned agreement violated Bankruptcy Code § 549(a) which prohibits post-petition transfers of property of the estate that are not authorized by the bankruptcy

13

court. Subsection 549(a) does not prohibit such transfers. Instead, it states that "the trustee may avoid" such transfers. Again, the bankruptcy court's power retroactively to authorize a post-petition secured financing must include the power retroactively to authorize transfers of property of the estate pursuant to such financing. Otherwise, the power retroactively to authorize post-petition financing would be meaningless. Thus, the aforementioned agreement is not illegal under Subsection 549(a) of the Bankruptcy Code.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bankr. P. 7056, when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. The Bankruptcy Court did not err in its finding that there is no genuine issue as to any material fact regarding whether the aforementioned agreement was illegal under Bankruptcy Code Subsections 362 (a), 364(c), and 549(a). Further, Jordan is plainly entitled as a matter of law to judgment that the aforementioned agreement was not illegal under Bankruptcy Code Subsections 362 (a), 364(c), and 549(a).

**C.     Authority to Cancel**

Finally, Appellants make the alternative argument that even if Jordan is a holder in due course able to enforce the aforementioned May 29, 2001 agreement, Capital was entitled to cancel the aforementioned May 29, 2001 agreement. Appellants contend that there is no legal authority obliging a creditor involved in post-petition financing to seek authorization of the financing rather than taking protective action such as cancellation of the financing agreement. Appellants suggest that the Bankruptcy Court "seems to rule" that there is such an obligation when it held that the secured financing was not void; however, they fail to direct this Court to any part of the record in which the Bankruptcy Court imposed such an obligation. (Appellant

Br. at 33).

Appellants argue that the Bankruptcy Court erred in finding that Capital was not entitled to cancel the unauthorized post-petition secured transaction and alleged security interest in the aforementioned vehicles. (Appellant Br. at 33).  Appellants' entitlement to cancel the unauthorized post-petition secured transaction and alleged security interest in the aforementioned vehicles was not an issue before the Bankruptcy Court.  The issue before the Bankruptcy Court was whether the transaction was illegal such that Appellants could defend against Appellee's assertion of its rights under the contract of the drawer. (Tr. of September 29, 2004 Ruling at 12).  The Bankruptcy Court held that because it has the equitable power retroactively to authorize a post-petition financing,  such financing is only voidable, not void.  (Tr. of September 29, 2004 Ruling at 18).  Appellants then were obligated to bring the post-petition financing to the Bankruptcy Court's attention only to the extent that Appellants sought to characterize the post-petition financing as void.  (Tr. of September 29, 2004 Ruling at 16).

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bankr. P. 7056, when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  The Bankruptcy Court did not err in its finding that there is no genuine issue as to any material fact regarding whether the aforementioned agreement was illegal under Bankruptcy Code Subsections 362 (a), 364(c), and 549(a).  Further, Jordan is plainly entitled as a matter of law to judgment that the aforementioned agreement was not illegal under Bankruptcy Code Subsections 362 (a), 364(c), and 549(a).  The fact that Appellants' characterization of the post-petition financing as void required the authority of the Bankruptcy Court does not affect this holding.

Accordingly, Judge Keir's conclusion that Jordan is entitled to payment of the aforementioned check, as a holder in due course, under the contract of the drawer, is correct.

## **CONCLUSION**

For the foregoing reasons, the Order of the Bankruptcy Court is AFFIRMED. A separate Order follows.

Dated: April 15, 2005          /s/
                               Richard D. Bennett
                               United States District Judge